IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| IRON MOUNTAIN PROCESSING, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>FORTIS METAL MANAGEMENT, LLC,<br>    *Defendant*. | CAUSE NO. _____ |

## ORIGINAL COMPLAINT

IRON MOUNTAIN PROCESSING, LLC ("Iron Mountain"), files this Original Complaint complaining of FORTIS METAL MANAGEMENT, LLC ("Fortis"), and for this purpose would show this Court the following:

### I.
### PARTIES

1. Plaintiff, IRON MOUNTAIN PROCESSING, LLC, is a limited liability company organized under the laws of the State of Ohio, who maintains its principal place of business in Cleavland Ohio, and is managed by its members, who reside in, and are citizens of, the State of Ohio.

2. Defendant, FORTIS METAL MANAGEMENT, LLC, is a limited liability company organized under the laws of the State of Texas, who maintains its principal place of business in Dallas, Texas, and is managed by its members, who reside in, and are citizens of, the State of Texas.  Fortis may be cited to appear by personal service of citation on its

registered agent for service: JASON WOLFF, 3800 MAPLE AVE., STE. 380, DALLAS, TEXAS 75219.

## II.
### VENUE & JURISDICTION

3. This court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a), because this court has original jurisdiction over this dispute, and the parties are citizens of different states.

4. This court has jurisdiction over this dispute pursuant to 28 U.S.C. §1332(a), because this action is a civil matter, where the sum in controversy exceeds 75,000 dollars, exclusive of interest and costs.

5. Venue for this dispute is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391, because this action is brought in the judicial district in which the defendant resides.

## III.
### ALLEGATIONS OF FACT

6. Plaintiff, Iron Mountain, is a company directly involved in the metal recycling business in the area around Cleveland, Ohio.

7. Defendant, Fortis, is a company that purports to allow scrap metal sellers to obtain the highest possible price, by subjecting these sales to be a competitive bidding process.

8. The Fortis bidding process takes place virtually, at a website known as www.fortismetal.com.

9. In order to take part in the bidding process, a potential bidder must first agree to a check-box type "Unified User Agreement" or "UUA". A true and correct copy of this agreement as it appeared on February 20th, 2024 is attached to this complaint as "**Exhibit A**".

10. On or about the 20th day of February, 2024, an employee of Iron Mountain was invited onto Fortis Metal Management's website in connection with an upcoming auction.

11. Iron Mountain checked the box "yes", agreed to the terms set out in the UAA, and was informed that its registration was "accepted" for the February 27th, 2024 auction.

12. Section 3.1 of the UUA states, "If you are the successful Buyer, you agree to pay the amount of your bid plus all applicable taxes and charges in the time and manner designated by this Agreement."

13. The UUA does not, however, create an obligation in Fortis, or its principle, to sell anything. And, in fact, Section 3.2 of the UAA states, "Buyer understands that FMM is not the Seller of the Lots described herein and is only Seller's agent."

14. Nowhere in the UAA does it state that a "Buyer" must enter into a subsequent contract in order to purchase metals from the actual seller of the Fortis auction.

15. On February 27th, 2024, the day of the auction, Iron Mountain submitted the highest bid, and was informed by Fortis on March 4th, 2004 that it had "won" the auction.

16. The highest bidder for each class of materials does not necessarily become entitled to purchase those materials. And, after the bidding process has concluded, the

blind bids are reviewed by Fortis to determine the actual party that will be proclaimed to have won the auction.

17. On March 7th, Fortis sent Iron Mountain a new document entitled "Service Provider Agreement" to Iron Mountain via email (hereafter, the "SPA"). A true and correct copy of the SPA is attached to this complaint as "**Exhibit B**".

18. The recited parties to the SPA are Fortis and Iron Mountain.

19. The SPA contains a variety of material terms that were not present in the Unified User Agreement.

20. These new terms include: (a) price and documentation requirements, (b) payment terms, (c) extensive insurance requirements naming Fortis as an additional insured, (d) hold harmless and indemnity clauses in favor of Fortis, (e) a confidentiality clause, and (f) a disclaimer of warranties as to the condition of the material it purports to sell. (see, Exhibit B).

21. Had the plaintiff known of these additional material terms, it would not have agreed to the UAA.

22. On March 12th, Iron Mountain informed Fortis of its intention not to execute the SPA, and it has not done so.

23. On March 13th, Fortis informed Iron Mountain that it considered its refusal to execute the SPA as a violation of the UUA, and declared its intention to seek a legal remedy.

24. On March 20th, Fortis made demand upon Iron Mountain for its claimed damages and attorney's fees for its failure to comply with the UUA.

25. The auction method utilized by Fortis does not allow a bidder to directly know whether another party has bid, or the amount of any competing bid. This information is known to and reported solely by Fortis.

26. Upon receipt of the defendant's damages claim, the plaintiff contacted likely qualified bidders in the Clevland area, and each of these companies denied that they placed the second place bid at the price level indicated by the defendant during the bidding process.

27. Iron Mountain, therefore, upon information and belief, has reason to believe Fortis manipulated the bidding process, and alleges this fact here.

## IV.
### THEORIES OF RECOVERY

28. Iron Mountain incorporates each of the forgoing factual allegations into these theories of recovery as if set out at length herein.

29. <u>Texas Declaratory Judgment Act</u> – Fortis contends that, as the "winning" bidder at its auction, Iron Mountain was obligated to execute the SPA. As a result, Fortis has made demand upon Iron Mountain for $26,426.79 in damages, plus attorney's fees. Iron Mountain contends that the UUA it agreed to prior to bidding required only that it pay the bid price. Iron Mountain contends it had no obligation to execute another agreement with additional material terms. In addition, Iron Mountain contends it is not bound by the SPA because it never agreed to it. A controversy exists between the parties, therefore, Iron Mountain asks this Court to resolve this dispute pursuant to Chapter 37 of the Texas Civil

Practices & Remedies Code ("Uniform Declaratory Judgments Act") by providing a declaration of the rights and duties of the parties under the UUA, and subsequent SPA.

30. <u>Fraud/Fraudulent Inducement</u> – In the unlikely event this court finds that the UUA required Iron Mountain to agree to additional undisclosed terms in the SPA, then Iron Mountain alleges in the alternative: (a) Fortis' purposeful concealment of the existence and terms of the SPA were a material false statement, (b) Fortis purposely concealed the SPA, and this concealment was equivalent to a false statement, (c) Fortis intended Iron Mountain to rely on this information (or concealment), and Iron Mountain actually did rely on Fortis' act of concealment, and (d) Fortis' act of concealment was the cause of injury to Iron Mountain for which it prays it recover its damages below.

31. <u>Texas Deceptive Trade Practices Act</u> – Iron Mountain possesses assets of less than twenty-five million dollars, and is, therefore, a consumer as that term is used in §17.45(4) of Chapter 17 of the Texas Business & Commerce Code (in this paragraph, the "DTPA" or the "Act"), and a "business consumer" as described and set out in §17.45(10) of the Act. The defendant's conduct has violated the terms of the Act by engaging in the following false, misleading, or deceptive acts or practices, as set out in §17.46(b) of the Act:

> §17.46(b)(2) – causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> §17.46 (b)(3) – causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

§17.46 (b)(5) – representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

§17.46 (b)(7) – representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

§17.46 (b)(12) – representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

§17.46 (b)(14) – misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

§17.46 (b)(24) – failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

These acts were a producing cause of the plaintiff's damages, and were relied on by the plaintiff to the plaintiff's detriment as described and set out in §17.50(a) of the Act, and were done knowingly and intentionally as described in §17.50(b) of the Act. The plaintiff is therefore entitled to damages under the Act equal to the amount of its economic damages, plus an amount equal to not more than three times the amount of economic damages.

32.     <u>Breach of Contract</u> – In the event that this Court finds that the UUA obligated and entitled Iron Mountain to purchase materials from Fortis, then Iron Mountain pleads in the alternative, that an agreement existed between the parties, that this agreement entitled Iron Mountain to purchase certain kinds of scrap metal at an agreed upon price, and created a duty in the defendant to sell these materials. Fortis' insistence on Iron Mountain's execution of the SPA was a breach of this agreement, and this breach was the cause of Iron Mountain's damages of at least 25,338.28 dollars in actual economic damages, which represents the profits Iron Mountain would have made but for Fortis' breach, plus its reasonable and necessary attorney's fees, for which it seeks recovery as set forth below.

33.     <u>Exemplary Damages</u> – In accordance with Chapter 41 of the Texas Civil Practices & Remedies Code, Iron Mountain alleges that it is entitled to exemplary damages equal to two times the amount of economic damages, plus and amount equal to any non-economic damages found by the jury, or 200,000 dollars, in accordance with §41.008(b) of the this Act, to wit, the plaintiff will show by clear and convincing evidence that: (a) the harm alleged resulted from fraud, malice or gross negligence as described in Chapter 41, §41.003.

V.
REQUESTS FOR RELIEF

34.     <u>Declaratory Judgment</u> – Iron Mountain ask this court for a declaratory judgment construing the rights and duties of the parties under the UUA and the SPA.

35. Actual economic or compensatory damages of at least $25,339.28, equal to the lost profits that Iron Mountain would have made but for the wrongful conduct of the defendant.

36. Consequential damages to compensate Iron Mountain for the damage to its reputation directly and foreseeably caused by the wrongful acts of the defendant.

37. Exemplary or punitive damages to deter further wrongful acts in the future, as more particularly pled and set out above.

38. Reasonable and necessary attorney's fees as authorized by the Chapters 37 and 38 of the Texas Civil Practices & Remedies Code, and Chapter 17 of the Texas Business & Commerce Code.

39. Pre-judgment and Post-judgment interest running from the date of the judgment at the statutory rate of interest.

40. Costs of court, and

41. any other relief to which Iron Mountain may show itself entitled, whether at law or equity.

PRAYER

FOR THESE REASONS, the plaintiff prays the defendant be cited to appear, and after a trial on the plaintiff's claims, that this court issue a declaration of the rights and duties of the parties in this matter, and/or award the plaintiff its damages as prayed for above.

Respectfully Submitted,

_____
Gerald Fowler
Bar No. 24006300
Tel.  (832) 477-7817
gff@mcgowenfowler.com

ATTORNEY IN CHARGE FOR PLAINTIFF
IRON MOUNTAIN PROCESSING, LLC

OF COUNSEL:
MCGOWEN & FOWLER, PLLC
1220 Blalock, Suite 339
Houston, Texas  77055

gff@mcgowenfowler.com
Tel. (832) 477-7817